IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GENUINE ENABLING TECHNOLOGY, LLC,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| v. | : | No. 17–134 |
| **NINTENDO CO., LTD.,** and **NINTENDO OF AMERICA, INC.,** | : | |
| *Defendants*. | : | |

**Goldberg, J.**                                                                 **February 25, 2019**

## MEMORANDUM OPINION

Currently before me in this patent infringement action is a motion challenging venue in this district. Plaintiff, Genuine Enabling Technology, LLC, a Delaware limited liability company, brought this action in this district, asserting patent infringement claims against two defendants—Nintendo Co., Ltd, a Japanese company, and its wholly-owned subsidiary, Nintendo of America, Inc., which is incorporated in the State of Washington.

Nintendo of America contends that venue in this district is improper under the patent venue statute, 28 U.S.C. § 1400(b), and moves for dismissal or, alternatively, transfer of the entire case to the United States District Court for the Western District of Washington. Plaintiff responds that Nintendo of America waived its ability to challenge venue in this district by registering to do business in Delaware and by designating an agent to receive service of process here. For the reasons that follow, I will grant Nintendo of America's Motion, and transfer this case, in its entirety, to the Western District of Washington.

1

I.      **FACTUAL & PROCEDURAL BACKGROUND**[1]

Plaintiff alleges that it is the owner of a patent that claims a method of data encoding and synchronization. In its Complaint for Patent Infringement, filed in this district on February 8, 2017, Plaintiff asserts infringement claims against Defendants, Nintendo Co., Ltd. (hereinafter "Nintendo (Japan)"), and its wholly owned subsidiary, Nintendo of America, Inc. (hereinafter "Nintendo of America").[2] Plaintiff alleges that Defendants market and sell video game consoles and controllers that infringe Plaintiff's patent. (Compl. ¶¶ 4, 8, 19-20, 21-24.)

As noted above, Plaintiff is a Delaware limited liability company. Nintendo (Japan) is a Japanese company. Nintendo of America is incorporated in the State of Washington, but is registered to do business in Delaware and has appointed an agent to receive service of process here. (Compl. ¶¶ 2-3, 5-6.)

Nintendo (Japan) filed an answer, raising improper venue as an affirmative defense. Nintendo of America, however, filed the instant Motion to Dismiss or Transfer, under 28 U.S.C. § 1406(a).[3] In its Motion, Nintendo of America argues that, under the patent venue statute, 28 U.S.C. § 1400(b), venue is improper in this district, because it is neither incorporated in Delaware nor has a regular and established place of business here. Plaintiff initially responds that Nintendo of America: (1) *does* have a regular and established place of business in Delaware; and

---

[1] The following facts are not in dispute for purposes of the instant motion, and are drawn from Plaintiff's Complaint and the parties' briefs.

[2] On May 18, 2017, Chief Judge D. Brooks Smith of the United States Court of Appeals for the Third Circuit designated me as a visiting judge for the District of Delaware, pursuant to 28 U.S.C. § 292(b), to handle this and other Delaware cases.

[3] Nintendo of America and Nintendo (Japan) have also filed a motion seeking transfer to a more convenient venue under 28 U.S.C. § 1404(a). Because I will grant Nintendo of America's Motion under § 1406(a), and transfer the entire case to the Western District of Washington, I need not reach the motion brought under § 1404(a).

(2) waived its ability to challenge venue in this district by registering to do business in Delaware and by designating an agent for service of process in this state.

While the Motion was pending, Plaintiff informed the Court that, in light of a subsequent decision by the United States Court of Appeals for the Federal Circuit, it would no longer argue that Nintendo of America has a regular and established place of business in Delaware, or seek jurisdictional discovery on that issue. Rather, Plaintiff would rest its opposition to the Motion solely on its argument that Nintendo of America waived its ability to challenge venue in this district. (Pl.'s 10/25/2017 Ltr., Doc. No. 36.)

For the reasons set out below, I conclude that Nintendo of America has not waived its ability to challenge venue in this district. Accordingly, I will grant the Motion and transfer the entire case to the Western District of Washington, where venue is proper as to both Defendants.

## II.     LEGAL STANDARD

When a plaintiff files a suit in an improper forum, "district courts are required either to dismiss or transfer to a proper forum." Lafferty v. St. Riel, 495 F.3d 72, 77 (3d Cir. 2007) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465–66); 28 U.S.C. § 1406(a). Motions to dismiss for improper venue "generally require the court to accept as true the allegations of the pleadings." Heft v. AAI Corp., 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)). "The parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." Heft, 335 F. Supp. 2d at 762 (citing Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992); Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982)). "Dismissal is considered to be a harsh remedy . . . and transfer of venue to another district court in which the action could originally have been brought,

3

is the preferred remedy." Spiniello Cos. v. Moynier, No. 13-5145, 2014 WL 7205349, at *5 (D.N.J. Dec. 17, 2014) (quoting NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 319 (D.N.J. 1998)).

### III.   ANALYSIS

Venue for a patent infringement action is governed by the patent venue statute, 28 U.S.C. § 1400(b), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." This statute constitutes "the exclusive provision controlling venue in patent infringement proceedings and [is] not supplemented or modified by the general venue statutes," set out in 28 U.S.C. § 1391. TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1518 (2017) (internal quotation marks omitted).

In TC Heartland, the Supreme Court confronted the question of where a domestic corporation "resides" for purposes of § 1400(b). 137 S. Ct. at 1516. The Court concluded that a corporation resides only in its state of incorporation, rejecting an interpretation of § 1400(b) that would have imported the broader definition of the term found in the general venue statute, § 1391. Id. Accordingly, under § 1400(b), as interpreted in TC Heartland, venue as to a domestic corporation that is a defendant in a patent infringement action is proper only: (1) in a district within the corporate defendant's state of incorporation, or (2) in a district where the corporate defendant has a regular and established place of business and has committed acts of infringement.

4

As Plaintiff now concedes, Nintendo of America meets neither of these conditions, such that venue is appropriate in this district. Nintendo of America is incorporated in Washington, not Delaware, and does not have a regular and established place of business in this district. Accordingly, under § 1400(b), venue is not proper in this district.

Nevertheless, Plaintiff contends that a corporate defendant may waive its ability to challenge improper venue under § 1400(b), and that Nintendo of America has done so by registering to do business in Delaware and by appointing an agent for service of process in this state. In advancing this argument, Plaintiff cites a line of cases beginning with the Supreme Court's decision in Neirbo Company v. Bethlehem Shipbuilding Corporation, Limited, 308 U.S. 165 (1939). Nintendo of America responds that the holding of Neirbo is inapplicable to patent infringement actions governed by the patent venue statute, § 1400(b).

In Neirbo, the Supreme Court began with the observation that venue, unlike subject-matter jurisdiction, is a "privilege" conferred to defendants by statute, and that "[b]eing a privilege, it may be lost" (i.e., waived). 308 U.S. at 168. A waiver may occur through "failure to assert [the privilege] seasonably . . . or by submission through conduct." Id.

The Neirbo Court then turned to the specific question at issue in that case: whether the conduct that would constitute a waiver would include a corporate defendant's "designation . . . of an agent for service of process, in conformity with the law of [the] state in which suit is brought." Id. at 167. The suit in Neirbo had been brought in the United States District Court for the Southern District of New York. Id. The corporate defendant in the case was not a New York corporation, but had designated an agent for service of process there, in accordance with the requirements of New York state law. Id. at 174-75. The Court concluded that, by doing so, the corporate defendant had waived its ability to challenge the propriety of venue under the general

5

venue statute—a predecessor of the currently applicable general venue statute, § 1391. Id. at 168-175.

Since the Neirbo decision, several federal courts—both courts of appeals and district courts—have considered whether Neirbo's holding, that a corporate defendant waives its ability to challenge proper venue *under the general venue statute*, applies equally to actions governed by the *patent venue statute*, § 1400(b). While the United States Courts of Appeals for the Third and Federal Circuits are not among these courts,[4] it appears that every federal court that has squarely confronted the question has reached the same conclusion: that the Neirbo rule is inapplicable to cases governed by the patent venue statute.

The United States Court of Appeals for the Second Circuit addressed the question in 1943, just four years after the Neirbo decision. See Bulldog Elec. Prods. Co. v. Cole Elec. Prods. Co. ("Bulldog"), 134 F.2d 545, 547 (2d Cir. 1943). In Bulldog, the plaintiff brought a patent infringement action in the United States District Court for the Eastern District of New York against a corporate defendant that was incorporated in Pennsylvania, but had designated an agent for service of process in New York. Id. at 546. The corporate defendant challenged venue under the patent venue statute—a predecessor to § 1400(b). Id. Before turning to whether venue was proper under that statute, the court first considered whether, under the Supreme Court's holding in Neirbo, the corporate defendant's designation of an agent for service of process in New York constituted a waiver of its ability to challenge venue there. Id. at 547. Concluding that it did not, the court noted that while the designation of an agent for service of process in New York meant

---

[4] Accordingly, I need not decide which circuit's law controls. See In re Micron Tech., Inc., 875 F.3d 1091, 1097 & n.3 (Fed. Cir. 2017) (addressing, as a matter of first impression, whether the Supreme Court's decision in TC Heartland constituted a change in the law sufficient to permit a defendant to challenge venue without having earlier raised the issue in a Rule 12 motion, and noting that the court "need not decide whether [Federal Circuit] law or the relevant regional circuit's law governs the particular waiver question presented," given that "[n]o decision of the Supreme Court or a circuit court . . . r[an] counter to [the court's] common-sense interpretation").

that the corporate defendant "may be sued in the federal courts sitting in New York, at least where diversity is the ground of federal jurisdiction," the corporate defendant "was clearly entitled to assert its right not to be sued [in New York] for patent infringement except when venue of the suit was as required by [the patent venue statute]." Id.

While the Second Circuit's opinion in Bulldog provided little reasoning in support of its conclusion, other courts of appeals reached the same conclusion thereafter, providing additional reasoning. See Carbide & Carbon Chems. Corp. v. United States Indus. Chems., Inc. ("Carbide & Carbon"), 140 F.2d 47, 50 (4th Cir. 1944); Blaw-Knox Co. v. Lederle, 151 F.2d 973, 974 (6th Cir. 1945); Ruth v. Eagle-Picher Co., 225 F.2d 572, 577 (10th Cir. 1955). In Carbide & Carbon, the United States Court of Appeals for the Fourth Circuit held that the Neirbo rule was inapplicable in patent infringement actions, noting that while the action at issue in Neirbo had been brought on the basis of diversity of citizenship, and was thus governed by the general venue statute, "venue in patent infringement suits is to be determined *solely* by application of [the patent venue statute] and is not to be extended by the provisions of [the general venue statute]." 140 F.2d at 48 (emphasis added). Likewise, in Blaw-Knox Company, the United States Court of Appeals for the Sixth Circuit concluded that the rule in Neirbo was inapplicable because the patent venue statute "is wholly independent of [the general venue statute]." Id.

But the rationale for declining to apply the Neirbo rule in patent infringement actions was best explained by the United States Court of Appeals for the Tenth Circuit in Ruth, where the court reasoned that the patent venue statute "reflected a sound policy of long standing," in which Congress had determined that "practicality and convenience are best served when [a patent infringement] case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business." 225 F.2d at 577. In light of this long-

established policy, the court concluded, it should not "lightly infer[]" that Congress intended the Neirbo rule to apply in patent infringement cases. Id.

District courts, including one district court within the Third Circuit, have uniformly followed the lead of these decisions of the courts of appeals. See Morse v. Master Specialties Co., 239 F. Supp. 641, 642-43 (D.N.J. 1964) (holding that "[t]he waiver doctrine of Neirbo . . . ha[d] no application" to a patent infringement action); see also Mastantuono v. Jacobsen Mfg. Co., 184 F. Supp. 178, 180 (S.D.N.Y. 1960) (noting that the corporate defendant in a patent infringement action "ha[d] not, by the mere designation of the New York Secretary of State to receive process, waived its right to [challenge proper venue] under § 1400(b)"); Harris-Intertype Corp. v. Photon, Inc., 185 F. Supp. 525, 530-31 (S.D.N.Y. 1960) (noting that "the rationale of Neirbo was not applicable to a patent infringement action"). Recognizing this trend, treatises and other secondary sources have reached the same conclusion. See 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3823 (3d ed. 2007) ("[T]he designation of an agent for the receipt of process in a district is not a consent to be sued for patent infringement there if the district would not be proper otherwise."); Jean F. Rydstrom, Annotation, What Constitutes "Regular and Established Place of Business" Within the Meaning of 28 U.S.C.A. § 1400(b) Fixing Venue in Actions for Patent Infringement, 12 A.L.R. Fed. 502 (1972) ("[T]he Neirbo rule does not apply in a civil action for patent infringement.").

The reasoning of these cases is based upon Congress's purpose in enacting a patent venue statute that is both exclusive of the general venue statute, and narrower than that statute in the scope of venues that it permits. See Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 262 (1961). As the Supreme Court explained in Schnell:

> [C]ongress adopted the predecessor to § 1400(b) as a special venue statute in patent infringement actions to eliminate the abuses engendered by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served. The Act was designed to define the exact jurisdiction of the courts in these matters, and not to dovetail with the general venue provisions.

Id. (citations, internal quotation marks, and alterations in the original omitted). This view of Congress's purpose was recently reaffirmed by the Supreme Court in TC Heartland, which rejected an interpretation of § 1400(b) that would have widened the scope of permissible venues for patent infringement cases by incorporating the definition of corporate residency found in the general venue statute, § 1391. 137 S. Ct. at 1518 (recounting the history of the patent venue statute and cases expressing a view of the statute's purpose, and noting that this "purpose . . . would be undermined by interpreting [§ 1400(b)] to dovetail with the general provisions relating to the venue of civil suits" (internal quotation marks omitted)).

Importantly, the Supreme Court has held that this venue purpose must be considered in determining whether a certain type of conduct on the part of a defendant constitutes waiver of its ability to challenge proper venue under the patent venue statute. See Schnell, 365 U.S. at 262 ("[C]ourts affix to conduct such consequences as to place of suit consistent with the policy behind the applicable venue statute." (internal quotation marks omitted)). In Schnell, the Court considered whether, in light of Congress's purpose in enacting the patent venue statute, a defendant in a patent infringement action should be deemed to have waived its ability to challenge venue where it assumed responsibility for defending one of its codefendants in the action, pursuant to an agreement. Id. at 262-64. The Court concluded that this did not constitute waiver, noting that "the practice [of assuming responsibility for a codefendant's defense] was not at all unusual at the time of [the patent venue statute]'s passage, and for us to enlarge upon the

mandate of the Congress as to venue in such patent actions would be an intrusion into the legislative field." Id. at 262-63.

The reasoning of Schnell applies with even greater force to the practice that Plaintiff contends constitutes waiver here: registering to do business in a state and designating a local agent to receive service of process. Not only is this practice longstanding and common—and thus undoubtedly known to Congress when it enacted the patent venue statute[5]—but the *manifest purpose* of Congress in enacting the statute was, again, to "eliminate the abuses engendered by previous venue provisions allowing [patent infringement] suits to be brought *in any district in which the defendant could be served.*" Schnell, 365 U.S. at 262 (emphasis added). Surely, in seeking to prevent corporate defendants from being sued for patent infringement "in any district in which [they] could be served," Congress did not intend that, by operation of a waiver rule, a corporate defendant could be sued in any state in which it had appointed an agent to receive service of process.

Plaintiff relies on three cases in support of its position that the Neirbo rule is applicable to patent infringement actions. (See Pl.'s Answering Br. 10-12 (citing Sunbury Wire Rope Mfg. Co. v. United States Steel Corp. ("Sunbury"), 230 F.2d 511, 513 (3d Cir. 1956); Crosley Corp. v. Westinghouse Elec. & Mfg. Co. ("Crosley"), 130 F.2d 474, 476 (3d Cir. 1942); In re First Solar Derivative Litig. ("In re First Solar"), No. 12-cv-417, 2013 WL 817132, at *5-6 (D. Del. Mar. 4, 2013).)) But each of these decisions is distinguishable from this case, as none involved an action for patent infringement governed by the patent venue statute.

---

[5] Congress first enacted a specific patent venue statute—the predecessor to § 1400(b)—in 1897. See TC Heartland, 137 S. Ct. at 1518. The practice, by states, of requiring out-of-state corporations to register to do business within the state and appoint a local agent for service of process goes back to at least 1877—and thus precedes the enactment of the patent venue statute by at least 20 years. See Ex parte Schollenberger, 96 U.S. 369, 370 (1877) (considering the jurisdictional effect of a Pennsylvania statute requiring any out-of-state insurance company, before doing business in Pennsylvania, to designate an agent for service of process in Pennsylvania).

In Sunbury, the United States Court of Appeals for the Third Circuit considered whether, in an antitrust action under the Clayton Act, venue was proper in the Eastern District of Pennsylvania, where the corporate defendant was incorporated in New Jersey but had registered to do business in Pennsylvania. 230 F.2d at 512. In concluding that the corporate defendant had waived its ability to challenge venue under Neirbo, the court rejected the argument that Neirbo was limited to cases involving state law claims brought under diversity of citizenship jurisdiction. Id. at 513. The court explained that "there is no federal rule or overriding federal policy which limits the effectiveness of this type of consent [i.e., waiver] in its application to federal litigation [i.e., cases involving a federal question]." Id.

Plaintiff urges that the same reasoning applies here, contending that "venue in patent cases, just like venue in any other federal litigation, is governed by federal statute, and therefore, any rule regarding waiver (including the rule established in Neirbo) should apply equally to patent cases as to all other federal question cases." (Pl.'s Answering Br. 11.) But this argument neglects the Supreme Court's instruction to consider the policy embodied in the patent venue statute when considering waiver. See Schnell, 365 U.S. at 262 ("[C]ourts affix to conduct such consequences as to place of suit consistent with the policy behind the applicable venue statute." (internal quotation marks omitted)).

The purpose of the antitrust venue provision at issue in Sunbury stands in stark contrast to that of the patent venue statute at issue here: as explained above, the patent venue statute is the *exclusive* provision governing venue in patent cases, and its manifest purpose is to *limit* the scope of permissible venues. The venue provision of the Clayton Act at issue in Sunbury was *not* exclusive of the general venue statute. See Sunbury, 230 F.2d at 512-13 (noting that the choice of forum "d[id] not satisfy the venue requirements of the Clayton Act *or Section 1391 of Title 28*

[i.e., the general venue statute]" (emphasis added)). Moreover, the Clayton Act *expanded*, rather than limited, the scope of permissible venues available to plaintiffs. See Federal Practice and Procedure § 3818 (3d ed. 2007) (noting that the venue provision of the Clayton Act "had an important liberalizing effect on antitrust venue when [it] was enacted," as "the general venue statutes would have allowed suit only in the district of which all defendants were inhabitants"). Accordingly, it does not follow from the court's conclusion in Sunbury—that the Neirbo rule applied to a federal statute expanding the scope of permissible venues in antitrust cases—that the rule applies to the patent venue statute. Indeed, the fact that Congress was motivated by opposite purposes in enacting the two venue statutes suggests that the results should be different.

Plaintiff similarly misses the mark in relying on a recent case from this district that considered the applicability of the Neirbo rule to a shareholder derivative suit, a type of suit governed by a special federal venue statute, 28 U.S.C. § 1401. See In re First Solar, 2013 WL 817132, at *8. Plaintiff urges that the court's application of the Neirbo rule to this venue statute—like Sunbury's application of the rule to the antitrust venue provision of the Clayton Act—supports its position that the rule applies to *all* federal venue statutes. (Pl.'s Answering Br. 11.) But as with the Clayton Act provision at issue in Sunbury, Plaintiff fails to appreciate Congress's diametrically opposed purposes in enacting the derivative action venue statute and the patent venue statute. As the Court concluded in In re First Solar, the derivative action venue statute "is not meant to function as an 'independent' venue statute, but instead is used *in conjunction with Section 1391 [i.e. the general venue statute]* to allow a plaintiff in such cases to (potentially) *expand* the number of district courts where federal venue may be found in shareholder derivative actions." 2013 WL 817132, at *10 (emphasis added). Again, by contrast, the patent venue statute is exclusive of the general venue statute and limits, rather than expands,

12

the districts in which venue lies for patent infringement actions. Accordingly, In re First Solar does not support Plaintiff's position that the Neirbo rule applies in patent infringement actions.

Plaintiff's reliance on the Third Circuit's decision in Crosley is likewise misplaced, because that case involved a *declaratory judgment action* governed by the general venue statute, not an *action for patent infringement* governed by the patent venue statute. 130 F.2d at 475. In Crosley, the plaintiff, an alleged patent infringer, sought a declaration of invalidity and non-infringement. Id. The defendant in the declaratory judgment action—the patent holder—argued that declining jurisdiction was appropriate, because it had initiated an infringement suit in a different district court. Id. In support of its position that the court should decline jurisdiction over the declaratory judgment action, and instead permit the infringement action to proceed, the patent holder argued that the Neirbo rule would allow a declaratory judgment action in a case involving patents to proceed "wherever [the patent holder] may be found." Id. at 476 The Third Circuit disagreed, concluding that while the Neirbo rule was indeed applicable to declaratory judgment actions involving patents, it "would only enlarge the venue of suits against a corporate patent owner and then only to states in which it had appointed a local agent for service of process." Id.

Plaintiff argues that, based on this holding, the court "clearly understood that Neirbo applied to patent cases." (Pl.'s Answering Br. 11). But a careful reading of the Crosley opinion only reflects that Neirbo applies to *declaratory judgment* actions involving patents—because such actions are governed by the general venue statute, not the patent venue statute. 130 F.2d at 476 (holding that, by contrast to a "patent infringement suit," which is "governed exclusively by [the patent venue statute]," a "patent declaratory judgment suit . . . is governed by the provisions of [the general venue statute]"). And if Crosley suggests anything as to patent infringement

actions, it suggests that the Neirbo rule would *not* apply to such actions. The following passage from Crosley is telling on this point:

> The fact that declaratory judgment suits can only be brought in the home district of a patent owner *or, in the case of a corporate owner, in those foreign states only in which it has made arrangements to be served with process [i.e., where the Neirbo rule applies]*, clearly negatives the [patent holder's] assertion that the venue of such suits is *very much wider* than that permitted to patent infringement suits by [the patent venue statute] under which, as we have seen, the latter suits may be brought not only in the district of which the defendant is an inhabitant but also in any other district in which the defendant has committed acts of infringement and has a regular place of business.

130 F.2d at 476 (emphasis added). By noting that the Neirbo rule does not render the scope of permissible venues for a patent declaratory judgment suit "very much wider than that permitted to patent infringement suits by [the patent venue statute]," the court suggests that the Neirbo rule does not apply to the latter, only to the former. Id. Accordingly, Crosley does not support Plaintiff's position that the Neirbo rule applies in patent infringement actions, and, in fact, suggests the opposite conclusion.

In sum, the Supreme Court has consistently interpreted the patent venue statute as "the exclusive provision controlling venue in patent infringement proceedings," and has rejected interpretations of that statute that would expand its scope and thereby undermine its purpose. TC Heartland LLC, 137 at 1518. This purpose, the Supreme Court has further instructed, should be carefully considered when determining whether a defendant's conduct in a patent infringement action constitutes waiver of its ability to challenge venue. See Schnell, 365 U.S. at 262. When the purpose of the patent venue statute is considered, the conclusion in this case becomes clear: deeming venue waived wherever a corporation has registered to do business and appointed an agent for service of process would "enlarge upon the mandate of the Congress as to venue in . . . patent actions," and would "be an intrusion into the legislative field." Id. at 263. Accordingly, I concur with the other federal courts that have considered this issue, and conclude that the Neirbo

rule is inapplicable to patent infringement actions governed by the patent venue statute, § 1400(b).

Having thus concluded that Nintendo of America did not waive its ability to challenge venue in this district, and because Plaintiff does not contend that venue in this district is proper as to Nintendo of America, the Motion to Dismiss or Transfer will be granted. Accordingly, it remains only to determine whether this action should be dismissed or transferred, and, if the latter, whether Plaintiff's claims against Nintendo (Japan) should be transferred as well. Neither issue is genuinely disputed or presents any difficulty.

As to whether dismissal or transfer is appropriate, Plaintiff contends that "a dismissal would unfairly prejudice [it] under the circumstances," given that the case was initiated approximately two years ago, and that, by statute, damages are not recoverable for infringement that occurred more than six years prior to the filing of the complaint. (See Pl.'s 10/25/2017 Ltr., Doc. No. 36, at 2 n.1 (citing 35 U.S.C. § 286.)) For this reason, and noting that neither Defendant has offered any reason why dismissal is a more appropriate remedy, I will exercise my discretion to transfer the claims against Nintendo of America to a proper venue rather than dismiss them. See Spiniello Cos., 2014 WL 7205349, at *5 ("[I]f the court finds that the interests of justice would be served, it may transfer the case to a proper venue.").

And because the claims against Nintendo (Japan) involve the same factual and legal issues as those against Nintendo of America, I will transfer the entire case to the Western District of Washington, where venue is proper as to both Defendants. See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 296 (3d Cir. 1994) (holding that "[w]here venue is proper for one defendant but not for another and dismissal is inappropriate, the district court . . . [may] transfer the case to another district that is proper for both defendants," and that a district court should do

<␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀␀

so where severing the claims would cause "the same issues to be litigated in two places" (internal quotation marks omitted)).[6]

## IV. CONCLUSION

For the reasons set out above, Defendant Nintendo of America's Motion to Dismiss or Transfer Venue will be granted and this case, in its entirety, will be transferred to the United States District Court for the Western District of Washington.

An appropriate Order follows.

---

[6] Venue in the Western District of Washington is proper as to Nintendo of America under § 1400(b), as it is incorporated in Washington. TC Heartland, 137 S. Ct. at 1517. And as an alien corporation, Nintendo (Japan) cannot challenge venue in any district. See In re HTC Corp., 889 F.3d 1349, 1354-1359 (Fed. Cir. 2018) (concluding that, in a patent infringement action, venue would lie against an alien corporation in any district, as "alien defendants are outside the operation of the federal venue laws").

so where severing the claims would cause "the same issues to be litigated in two places" (internal quotation marks omitted)).[6]

## IV. CONCLUSION

For the reasons set out above, Defendant Nintendo of America's Motion to Dismiss or Transfer Venue will be granted and this case, in its entirety, will be transferred to the United States District Court for the Western District of Washington.

An appropriate Order follows.

---

[6] Venue in the Western District of Washington is proper as to Nintendo of America under § 1400(b), as it is incorporated in Washington. TC Heartland, 137 S. Ct. at 1517. And as an alien corporation, Nintendo (Japan) cannot challenge venue in any district. See In re HTC Corp., 889 F.3d 1349, 1354-1359 (Fed. Cir. 2018) (concluding that, in a patent infringement action, venue would lie against an alien corporation in any district, as "alien defendants are outside the operation of the federal venue laws").