UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GENUINE ENABLING TECHNOLOGY LLC., <br><br> Plaintiff, <br><br> v. <br><br> NINTENDO CO., LTD. and NINTENDO OF AMERICA INC., <br><br> Defendants. | CASE NO. C19-00351-RSM <br><br> ORDER DENYING DEFENDANTS' MOTION TO PARTIALLY STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS |

## I. INTRODUCTION

In this patent infringement action, Defendants Nintendo Co., Ltd. and Nintendo of America, Inc. ("Nintendo") move to partially strike the "Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions" ("PICs") served by Plaintiff Genuine Enabling Technology ("GET"). Dkt. #71. Specifically, Nintendo seeks to strike GET's preliminary infringement contentions with respect to the Wii U GamePad, Nunchuk, Joy-Con and Nintendo Switch Pro Controller. GET opposes Nintendo's Motion in entirety. Dkt. #74. The Court finds oral argument not necessary to resolving the issues.

For the reasons stated below, the Court DENIES Nintendo's Motion to Strike.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 1

## II. BACKGROUND

GET alleges infringement of U.S. Patent No. 6,219,730 ("the '730 patent"), entitled "Method and Apparatus for Producing a Combined Data Stream and Recovering Therefrom the Respective User Input Stream and at Least One Additional Input Signal." *See* Dkt. #1-1. GET describes the patent as claiming methods and systems for user input devices and console systems, such as those found in video game products manufactured by Nintendo. Dkt. #1 at ¶4.

This case was originally filed in the U.S. District Court for the District of Delaware on February 8, 2017. Dkt. #1. On March 11, 2019, the case was transferred to the Western District of Washington. Dkt. #47. Between case initiation and transfer to this District, Nintendo filed two petitions for inter partes review in the U.S. Patent and Trademark Office seeking invalidation of certain claims of the '730 Patent. The U.S. Patent and Trademark Office denied both of Nintendo's petitions on the basis that Nintendo failed to establish reasonable likelihood that it would prevail in establishing unpatentability of any of the challenged claims. Dkts. #75-1 at 28; #75-2 at 25.

In its complaint, GET contends that certain Nintendo products, including "consoles, console systems, accessories, controllers and components of those products" infringe on one or more claims of the '730 patent. Dkt. #1 at ¶4. As examples of Nintendo's infringing products, GET lists "the Nintendo Wii console system, the Nintendo Wii Remote, and the Nintendo Wii Remote Plus (collectively, 'the Nintendo Products')." *Id.* GET describes the Nintendo Products as "*[n]on-limiting examples* of these user input devices and console systems" sold by Nintendo in the Western District of Washington. *Id.* at ¶11 (emphasis added).

On May 3, 2019, parties submitted a joint status report pursuant to Fed. R. Civ. P. 26(f) outlining the timing and sequence of discovery. Dkt. #66. The report lists the following "accused

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 2

products": the Nintendo Wii Console System, the Nintendo Wii Remote, and the Nintendo Wii Remote Plus. *Id.* at 1. Based on the information in this report, parties developed a discovery plan including relevant disclosure deadlines. However, on May 20, 2019—immediately before parties' status conference with the Court—GET served its first set of discovery requests on Nintendo. Dkt. #72-1 at 1. In addition to listing the Wii Console, Wii Remote, and Wii Remote Plus as "accused products," GET also sought discovery on four additional products: the Wii U GamePad, Nunchuk, Joy-Con, and Nintendo Switch Pro Controller. Dkt. #72-2 at 2. Nintendo contends that these discovery requests were "the first time" since inception of the case that GET alleged infringement for products besides the Wii Console, Wii Remote and Wii Remote Plus. Dkt. #71 at 5.

On May 28, 2019, pursuant to Local Patent Rule 120, GET served its preliminary infringement contentions ("PICs") setting out the claims of the patent it contends each of Nintendo's products infringes, and generally identifying the aspects of Nintendo's systems that it believes give rise to the infringement. *See* Dkt. #72-4. In accordance with its May 20, 2019 discovery requests, GET's PICs listed the Wii console, Wii Remote, Wii Remote Plus, Wii U GamePad, Nunchuk, Joy-Con, and Nintendo Switch Pro Controller as "accused products." *Id.* at 3. On June 13, 2019, before serving its non-infringement and invalidity contentions under Local Patent Rule 121 due on June 26, Nintendo filed this Motion to Partially Strike GET's infringement contentions with respect to the Wii U GamePad, Nunchuk, Joy-Con and Nintendo Switch Pro Controller. Dkt. #71.

### III. DISCUSSION

Nintendo requests that the Court strike GET's PICs on the basis that GET "sought to quintuple the size of the case" by adding four products not specifically listed in its original

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 3

complaint or the status report. Dkt. #71 at 5. Specifically, GET included the Wii U GamePad, Nunchuk, Joy-Con, and Nintendo Switch Pro Controller to the list of "Accused Products," whereas the complaint and status report only listed the Nintendo Wii Console System, the Nintendo Wii Remote, and the Nintendo Wii Remote Plus. *Id.* Nintendo explains that because it was not aware of GET's intent to expand the scope of the case so drastically, neither Nintendo nor the Court was aware of the scope of the case going forward before the Court issued its scheduling order on May 20, 2019. *Id.* at 6. However, Nintendo was aware of the expanded scope by May 24, 2019, at which point parties stipulated to moving up the deadlines set by the Court for preliminary infringement contentions and preliminary non-infringement and invalidity contentions. *See* Dkt. #69 (Parties' Stipulation and Proposed Order to Amend Court's Scheduling Order).

Nintendo now moves to strike, without leave to amend, GET's PICs with respect to the Wii U GamePad, Nunchuk, Joy-Con, and Nintendo Switch Pro Controller on the basis that (a) GET's delayed disclosure prejudiced Nintendo; and (b) GET's infringement contentions violate disclosure requirements under the Local Patent Rules, thereby magnifying the prejudice to Nintendo. Dkt. #71 at 9-12.

**A. Prejudice to Nintendo through GET's Belated Disclosure**

Under this District's Local Patent Rules, the first event requiring a party to disclose a comprehensive list of accused products is the Disclosure of Asserted Claims and Infringement Contentions governed by Local Patent Rule 120. *See* W.D. Wash. LPR 120 (requiring service of asserted claims and infringement contentions within fifteen days of scheduling conference). As part of its preliminary infringement contentions, i.e. the PICs, the party claiming infringement must provide a comprehensive list of accused products "by name or model number, if known."

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 4

W.D. Wash. LPR 120(b). It is undisputed that GET did not specifically list the Wii U GamePad, Nunchuk, Joy-Con, and Nintendo Switch in its February 8, 2017 complaint nor in parties' May 3, 2019 joint status report. However, as Local Patent Rule 120 makes clear, GET was not required to disclose a complete list of "accused products" before service of the PICs. Similarly, while Nintendo claims that the four added products are "substantially different" from the Wii Remote and Wii Remote Plus based on physical features and how they connect to other devices, Dkt. #71 at 6-7, similarity between accused products is not required under the Local Patent Rules. Rather, Local Patent Rule 120 only requires that the "accused products" allegedly infringe on the claims of the '730 patent. *See* W.D. Local Patent Rule 120(b); *see also* Dkt. #74 at 7-8 (GET contends that products are "substantially similar" with respect to asserted claims of the '730 patent).

Nintendo also argues that before GET served its PICs, its complaint had already narrowed the scope of the accused products to the Nintendo Wii console system, Wii Remote, and Wii Remote Plus. Dkt. #71 at 4. The Court disagrees. GET's complaint uses expansive language in describing the infringing products, characterizing the "Nintendo Products" listed in paragraph 4 as "*[n]on-limiting examples* of these user input devices and console systems" sold by Nintendo. Dkt. #1, ¶¶ 4, 11 (emphasis added). GET thereby preserved its right to identify other "consoles, console systems, accessories, controllers and components of those products" that infringe on one or more claims of the '730 patent in its PICs. *Id.* at ¶4. Although Nintendo claims that "the clear import of GET's allegations" was the Wii Remote game controllers, Dkt. #71 at 4, the Court finds Nintendo's attempted narrowing of GET's infringement contentions contrary to both the plain language of GET's complaint as well as the disclosure requirements under the Local Patent Rules.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 5

Furthermore, Nintendo asserts that GET "remained silent" as to the full scope of accused products during the inter partes review process before the U.S. Patent and Trademark Office and benefited from arguing a narrower scope of the alleged invention. Dkt. #76 at 5. Now, Nintendo contends, GET is impermissibly arguing "a very different standard" in its infringement contentions by including the four additional products. *Id.* at 6 (citing *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017)). Nintendo relies on language from *Aylus* stating the importance of claims not being "argued one way in order to maintain their patentability and in a different way against accused infringers." *Aylus Networks, Inc.*, 856 F.3d at 1360. However, *Aylus* invoked this statement in reference to the doctrine of prosecution history disclaimer during claim construction, which addresses the *meaning* of a claim articulated by a patentee in past proceedings—not the scope of accused products that may infringe on that claim. *See id.*

Finally, the Court will consider prejudice to Nintendo caused by GET's misrepresentation in the May 3, 2019 joint status report. The report reads: "The accused products are the Nintendo Wii Console System, the Nintendo Wii Remote, and the Nintendo Wii Remote Plus." Dkt. #66 at 1. As GET acknowledges, its failure to list the other Nintendo products or otherwise indicate its intention to include products besides the Wii console and controllers was an "oversight." Dkt. #74 at 6. Although a joint status report is not intended to be a binding statement of issues, Rule 26 requires that parties engage in "good faith" discussions to submit a proposed discovery plan. Fed. R. Civ. P. 26(f)(2); *see also* W.D. Wash. Local Patent Rule 110. The Court recognizes that GET's "oversight" prejudiced Nintendo when the parties agreed to a discovery plan based on GET's inaccurate disclosure. However, what mitigates any prejudice to Nintendo is the fact that parties stipulated to *moving up* the deadlines four days after GET served its "expanded" discovery

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 6

requests. Dkt. #69. As emails between the parties make clear, Nintendo was aware of the "expanded scope" of GET's claims before parties stipulated to an amended discovery plan. *See* Dkt. #72-3 (Correspondence between GET and Nintendo between May 22–24, 2019). Consequently, while Nintendo argues that GET's belated disclosures forced it to quickly prepare non-infringement contentions by June 26 and also "rapidly adjust its preparations for invalidity contentions," Dkt. #71 at 9, Nintendo agreed—after learning of GET's intent to expand the scope—to move up its disclosure deadlines from the end of September to mid-June. For any prejudice caused to Nintendo, it was partly a prejudice of its own making.

Moreover, any prejudice to Nintendo caused by compressed discovery deadlines is also mitigated by parties' ability to request modification of the scheduling order. *See* W.D. Wash. LCR 16(b)(5). To the extent that Nintendo needs more time due to GET's error in the joint status report, parties are free to seek leave to amend the scheduling order after good faith efforts to meet and confer on the issue.

**B. Deficiencies in GET's Preliminary Infringement Contentions**

Having established GET's right to include additional products in its PICs, the Court will now address the PICs themselves. Nintendo argues that the PICs served by GET are "cursory" and "vague" in violation of Local Patent Rule 120. Upon review of the PICs, the Court finds them sufficiently detailed to meet the requirements of Local Patent Rule 120.

Pursuant to Local Patent Rule 120, the PICs must contain: (a) each claim of each patent that is allegedly infringed by each party; (b) each accused apparatus, product, device, process, method, act, or other instrumentality for each asserted claim; (c) a chart identifying specifically where each element of each asserted claim is located within each accused instrumentality; (d) for indirect infringement, a description of the acts of the alleged indirect infringer that induced the

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 7

direct infringement by a third party; (e) whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the accused instrumentality; and (f) the priority date to which each asserted claim allegedly is entitled, if applicable. *See* W.D. Wash. Local Patent Rule 120. There is no dispute that GET's PICs satisfy parts (a), (b), (d), (e) and (f). The relevant issue is whether GET's claim chart under part (c) sufficiently alleges "where each element of each Asserted Claim is found within each Accused Device" including for each claim "the identity of the structure(s), act(s) or material(s) in the Accused Device that performs the claimed function . . . ." Local Patent Rule 120(c).

Courts in the Western District of Washington have not articulated a standard to apply when evaluating the sufficiency of PICs under Local Patent Rule 120. Because of the "strong similarity" between this District's Local Patent Rules and those of the Northern District of California, courts in this District consider cases in the Northern District of California interpreting their own patent rules as "helpful for providing a standard here." *REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11-0554JLR, 2012 WL 3527891, at *2 (W.D. Wash. Aug. 15, 2012).

The requirements for PICs under Local Patent Rule 120 are nearly identical to the District of Northern California's Local Patent Rule 3–1 governing disclosure of asserted claims and infringement contentions. Citing to the standard for infringement contentions articulated by the Federal Circuit, the Northern District of California states that "the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Engineering, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000)). In effect, a plaintiff's infringement contentions "perform[] the traditional role of contention interrogatories." *Id.* at

1024. A plaintiff's PICs must therefore "be sufficient to raise a 'reasonable inference that all accused products infringe.'" *Id.* (quoting *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002)). Although Nintendo contends that reverse engineering or its equivalent is required before service of infringement contentions, Dkt. #76 at 6, the law is not clear on this issue. On the contrary, courts recognize "there is some ambivalence in the case law as to whether Local Rule 3–1 requires reverse engineering or its equivalent . . . ." *Id.* at 1025. The operative test is therefore whether the PICs provided reasonable notice to Nintendo for why GET believes the products infringe.

The Court finds that GET's contentions contain the requisite specificity required under Local Patent Rule 120 to provide reasonable notice to Nintendo. Nintendo generally objects to GET's PICs for lack of specificity but takes issue with two limitations in particular: the "synchronizing limitations" and the "initializing the communication link" requirements. *Id.* at 8-9. With respect to the "synchronizing limitations," the PICs state:

> <u>A microcontroller inside the controllers includes circuitry that constitutes</u> an encoding means that synchronizes the user input stream with the input stream and encodes them into a combined data stream. The combined data stream is transferable <u>to the console</u> via the communication means, <u>which is the wireless transceiver implemented for the Bluetooth or equivalent communication link used by the controllers. The synchronization of the user input stream with the input stream can be observed in the manner in which the game responds.</u>

Dkt. #72-4 at 7 (underline added). Aside from the underlined language, this contention mimics the language of Claim 1 of the '730 patent:

> A user input apparatus operatively coupled to a computer via a communication means additionally receiving at least one input signal, comprising . . . encoding means for synchronizing the user input stream with the input stream and encoding the same into a combined data stream transferable by the communication means.

Dkt. #1-1 at 15. In effect, GET has identified a microcontroller inside the Nintendo products' controllers that includes circuitry that allegedly infringes on Claim 1. Nintendo also provides

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 9

similar examples of vague language regarding circuitry in the microcontroller that infringes on Claims 14, 16, and 21. Dkt. #71 at 9. GET contends that it cannot provide additional information on the microcontroller, such as the structure of the microcontrollers and the specific circuit components, without access to non-public information. Dkt. #74 at 9. GET also contends that reverse engineering would not provide additional detail, "because the microcontrollers are complex computers on a single integrated circuit." *Id.*

Likewise, with respect to the "initializing the communication link" requirements, the PICs state:

> <u>Communication between the consoles and the controllers using the Bluetooth communications link is implemented by</u> a programming method that comprises the step of initializing the communication link.

Dkt. #72-4 at 10 (underline added). Again, with the exception of the underlined language, this contention appears to mimic the language of Claim 14:

> A programming method, executed by a computer communicatively coupled via a communication link to a user input means having means for synchronizing and encoding a user input stream and at least one additional input signal into a combined data stream, comprising the steps of: initializing the communication link[.]

Dkt. #1-1 at 15. GET again argues that additional details, including what specific parts of the Bluetooth protocols used by Nintendo, require access to non-public information about which protocols Nintendo's products use. Dkt. #74 at 10.

The excerpted contentions, on their own, are arguably insufficient to satisfy Local Patent Rule 120. *See Network Caching Tech. LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128, at *6 (N.D. Cal. Aug. 13, 2002) (PICs cannot "simply mimic[] the language of the claim," providing "no further information to defendants than the claim language itself."). However, a review of GET's complete PICs fills in important details of GET's infringement claims that were lacking from the excerpts selected by Nintendo. *Compare* Dkt. #74-2 *with* Dkt.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 10

#75-3. With respect to Claim 1, the complete PICs clarify that the microcontroller in each of the devices interacts with an accelerometer with analog motion sensors and, where possible, state the model number and name of the accelerometers. Dkt. #75-3 at 48-49. With respect to Claim 14, GET provides the model number and manufacturer of the Bluetooth chip contained in each device responsible for communication between the console and controllers. Dkt. #75-3 at 26. In *Shared Memory*, the court found that infringement contentions that identified specific chips by manufacturer and model number and/or by physical location on the circuit board were sufficient to provide reasonable notice to the defendant, and therefore satisfied the requisite specificity under Rule 3–1. *Shared Memory Graphics LLC*, 812 F. Supp. 2d at 1025. Alternatively, where the infringement contentions failed to explain "what components and circuity of the accused products infringe their patents[,]" the court determined that plaintiff failed to provide a meaningful description of its theories. *Id.* at 1025–26. Here, GET has alleged the specific components and, where possible, identified their model number and name. Allowing GET the opportunity to glean more information through discovery accords with this District's case law, which recognizes that the Local Patent Rules require disclosures before the completion of claim discovery. *Recognicorp, LLC v. Nintendo Co.*, No. C12-1873RAJ, 2013 WL 2099518, at *2 (W.D. Wash. May 8, 2013) (In some cases, "discovery might be necessary to flesh out the preliminary assertions of an infringement (or non-infringement) contention.").

Nintendo also argues that GET's PICs cannot satisfy Local Patent Rule 120 given GET's failure to exercise sufficient diligence when it researched the accused products. First, Nintendo asserts that GET incorrectly described how the Wii U GamePad connects to its console. Dkt. #76 at 5-6 (claiming that Wii U GamePad connects with WiFi as opposed to Bluetooth). However, the accuracy of GET's claims does not address the question of factual sufficiency

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 11

under Local Patent Rule 120—Nintendo's rebuttal only confirms that GET supplied sufficient information to allow Nintendo to respond. Instead, the accuracy of GET's claims goes to the question of GET's diligence in preparing its PICs, which will affect whether the Court permits GET to amend any incorrect claims under Local Patent Rule 124. *See* W.D. Wash. Local Patent Rule 124(c) (party seeking to amend PICs must demonstrate it undertook "diligent efforts" to discover nonpublic information about accused products); *see also Avocent Redmond Corp. v. Rose Elecs.*, Case No. C06-1711-RSL, 2012 WL 4903278, at *1, *3 (W.D. Wash. July 6, 2012) (holding plaintiff to original infringement contentions and stating "the judges of this district expect that a party filing a patent infringement case already has in its possession information sufficient to support its claim"). Similarly, Nintendo argues that had GET looked harder, it could have found publicly-available information on Nintendo's Bluetooth protocol that would have allowed GET to articulate how protocol in the accused controllers meets the claim elements. *See* Dkt. #76 at 6.[1] Again, the Court finds that Nintendo's argument addresses the diligence of GET's research more than the factual sufficiency of its PICs.

For the foregoing reasons, the Court finds that GET's PICs meet the requisite factual specificity under Local Patent Rule 120.

### C. Amendment of Original Complaint

Nintendo has acknowledged that Federal Rule of Civil Procedure 15(d) does not require GET to supplement its complaint to allege infringement by the Nintendo Switch products. Dkt. #76 at 8 ("[T]he Court need not rule on the supplemental pleading issue."). Accordingly, the Court need not address this issue.

---

[1] The website cited by Nintendo links to a document titled "Human Interface Device Profile 1.1" dated February 21, 2012. The document does not specify which of the accused Nintendo products use these Bluetooth protocols. Given the document's date and lack of reference to Nintendo products, its utility to GET's infringement contentions is unclear to the Court.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS – 12

## IV. CONCLUSION

The Court, having considered the parties' briefing, the declarations and exhibits in support thereof, and the remainder of the record, hereby finds and ORDERS that Nintendo's Motion to Strike, Dkt. #71, is DENIED.

DATED this 12 day of August 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE